**In re Charles M. WALSH and Gail M. Walsh, Debtors.**

**Bankruptcy No. 92–11194.**

United States Bankruptcy Court, D. Rhode Island.

July 27, 1993.

Paul DeMarco, Cuzzone, Geremia & Civittolo, Providence, RI, for debtors.

Michael A. DeSisto, Rossi, Kelaghan & DeSisto, Providence, RI, for Henry A. Rossi.

Daniel J. Schatz, Associate Director and Chief Legal Counsel, State of Rhode Island Dept. of Business Regulation, Providence, RI.

## DECISION AND ORDER

ARTHUR N. VOTOLATO, Bankruptcy Judge.

Heard on November 3, 1992 on the Motion of secured creditor Henry A. Rossi for Relief from Stay, pursuant to 11 U.S.C. § 362, and the Objection of Debtors Charles and Gail Walsh. The ground for the Debtors' objection, and the central issue at trial, was whether the mortgage loan in question violates the Rhode Island Secondary Mortgage Loan Act, R.I.Gen. Laws §§ 19–25.2–1 *et seq.* (as it existed in July, 1989), such that the entire note and mortgage should be declared invalid.

The evidence can be summarized as follows: The Walsh's ran into financial problems in 1989 as a result of Mrs. Walsh's loss of employment and the hospitalization of her husband. At that time there were two mortgages on their home, at least one of which was in default, and a foreclosure sale was scheduled for late July, 1989. In her various efforts to save the house, Mrs. Walsh responded to a television commercial offering/soliciting home mortgage loans, and she spoke with a Mr. Joseph Guittari. After short discussion and on the same day, Guittari put Walsh in touch with a Mr. Jeff Rose, who came to the house and advised her, *during that initial visit,* that he could arrange a loan in order to avoid the foreclosure. She was told of the anticipated interest rate and certain fees, but not about the length of the loan or any other details of the transaction. Mrs. Walsh testified that after Rose's initial visit, she was "strung along" by him for about four weeks, during which she was led to believe that they would be doing business with a mortgage loan company in East Providence, Rhode Island.

Sometime later Mrs. Walsh met again with Rose, this time in Providence, when he requested and received a $300 money order for "paperwork." She was told not to name the payee. Neither at this time, nor at any other time during the loan process was any written material provided to the Walshes explaining monthly loan payments, fees, rates, or other information pertinent to this transaction. Moreover, Mrs. Walsh didn't even know the identity of the lender until the day before the closing, and she saw no documents until the actual closing. No information was required of the Walshes to obtain this loan, other than an oral statement as to their combined income, and a formal, written loan application was never even mentioned.

On July 27, 1989, Rose telephoned the Walshes and told them that the loan transaction would take place the following day. The closing was held at attorney Albert Rossi's office and was attended by Mr. and Mrs. Walsh, Albert Rossi, Esq., Rose, and Guittari. Mrs. Walsh testified, and we believe her, that she was not given a fair opportunity to read any of the loan documents; that she didn't know the interest rate would be 16% until that very morning; and that it was *never* explained to her that this was to be an interest-only loan, with the entire balance due in a balloon payment after three years. The only item Mrs. Walsh could recall discussing was the prepayment penalty clause. The closing, which lasted only about ten minutes, was conducted hastily because Albert Rossi had to attend a court hearing. The promissory note contains no disclosure of the fees to be paid, including brokerage, origination, or any other charges, and the Walshes stated that they were never advised to consult an attorney, or that they would be paying for the title services.

In both the settlement sheet and the borrowers agreement, $2,000 is listed as being paid to the "Regional Banking Group" for "its efforts to obtain a loan for the Borrowers." Joseph Guittari executed the borrowers agreement on behalf of the Regional Banking Group. At the time, Guittari was a licensed broker within the meaning of R.I.Gen.Laws § 19–25.2–2. In addition, in the settlement sheet, $500 is listed as representing the payment of two points, and $665 is deducted for assorted title and recording fees. None of these charges were disclosed to the Walshes prior to the closing, nor were they ever provided with a copy of the Department of Business Regulation (DBR) schedule of maximum service charges. *See* R.I.Gen.

Laws § 19–25.2–24 ("Every licensee shall furnish to every applicant for a secondary mortgage loan a copy of said schedule [maximum service charges] at the time when such application is made."), and Regulation 87–2.. Moreover, many of the charges reported on the settlement sheet (the property appraisal, title insurance and recording fees) exceeded the maximum authorized charges. These numerous infringements render the July 28, 1989 secondary mortgage loan made by Rossi to the Walshes violative of the Rhode Island Secondary Mortgage Loan Act (the "Act").

A further issue raised at the hearing was whether the lender, Henry A. Rossi, can be held accountable for said violations where there is no evidence that he was a licensee under R.I.Gen.Laws § 19–25.2–2,[1] or that he was required to be a licensee.[2]

The Debtors argue that an agency relationship existed between brokers Guitarri and Rose, and the lender Henry Rossi, such that Guitarri's licensee status should be imputed to Rossi, for the purpose of voiding the loan transaction. Upon consideration of the entire record, we agree with the Debtors' contention that an agency relationship did exist herein between Guitarri, Rose, and Rossi. This was a carefully thought out course of action by these three people, designed specifically to avoid having to comply with disclosure laws intended to protect distressed[3] and unsophisticated consumers. In our opinion, the Act contemplates such an agency relationship as exists here, where the two brokers and the lender had a common interest in selling their services to these vulnerable people. We are satisfied that the transaction was intentionally structured so that any fees paid to the brokers would come directly from the borrower and not the lender, to create the illusion that no such agency relationship existed. This facade is rejected as pure subterfuge, and is at odds with the facts and the real intention of the lender and brokers. To the contrary, we find that Guitarri introduced Rose to the Walshes, and Rose then made an agreement with Rossi to produce a loan transaction from which they *all* would benefit financially. Based on these facts, we rule as a matter of law that an agency relationship[4] existed between Guitarri, Rose, and Rossi. This ruling, however, is not dispositive of the matter before us.

Although the above findings and conclusions establish numerous violations of the Secondary Mortgage Loans Act, which are imputed herein to the lender Rossi, we are nevertheless left with a most unfair, but unavoidable, end result. The remedy provision relied upon by Debtors to avoid the loan in question, R.I.Gen.Laws § 19–25.2–29, was amended by the legislature in May, 1983, to narrow the scope of its application to a "violation of provisions of *section 19–25.2–2*," and eliminating its previous coverage of "violation[s] of any provision of this *chapter*."[5] The legislative history is silent as to the reason for this restrictive amendment, and even more puzzling, no replacement penalty was added to cover situations where other provisions of the Secondary Mortgage Loan Act (other than § 19–25.2–2) are violated, as occurred in this case. This appears to be a textbook example of successful, low profile, special interest legislation, which now deserves the attention it did not receive in 1983.

As a result of what we foresaw as a bizarre but inevitable result here, we requested the Director of Business Regulation to issue an opinion letter advising

1. Section 19–25.2–2 of the General Laws requires a person who makes or negotiates more than six secondary mortgage loans in any one calendar year in the regular course of business, to obtain a license from the Rhode Island Department of Business Regulation.

2. No evidence was introduced that Rossi made more than six secondary mortgage loans in a given calendar year.

3. I.e. people whose homes are on the brink of foreclosure.

4. But for certain technical constraints, it could more accurately be described as a conspiracy.

5. Thus, the only remaining statutory provision that carries a penalty for its violation is the requirement that a lender be licensed when more than six such loans are made in one calendar year.

whether any subsequent regulatory action has been taken to cure this blatant defect, and also to provide us with his interpretation of the specific provisions at issue. The Associate Director and Chief Legal Counsel for the DBR responded on April 13, 1993, confirming our reading of the 1983 amendment and further advising us that, to date, no remedial provisions have been enacted to cover the present statutory void regarding violations of Chapter 25.2 of Title 19 (other than § 19–25.2–2, for failure to obtain a license). In these circumstances, we are powerless to grant the Debtors' request to avoid the mortgage in question, as there is no present statutory authority to do so.

The DBR indicated in its letter that efforts are presently underway in the legislature to remedy this defect in the current statutory scheme. In the interim, unfortunately, for these Debtors and other borrowers similarly situated, this Court is without authority to enter any meaningful order to redress such activities by the likes of Jeff Rose, Guittari, and company.

With reference to Rossi's Motion for Relief from Stay to foreclose on the Debtors' residence, the parties have agreed that if the mortgage is determined to be enforceable, relief should be granted, as there is no equity in the subject property. Accordingly, it is reluctantly ORDERED that Rossi's Motion for Relief from Stay be and is GRANTED.

Enter Judgment consistent with this opinion.

### JUDGMENT

In accordance with Fed.R.Bankr.P. 9021, and for the reasons set forth in the DECISION AND ORDER issued by the Honorable Arthur N. Votolato, United States Bankruptcy Judge, on July 27, 1993, Judgment is hereby entered.